## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Barbara W. Rosenblum

v.

Benjamin F. Summerlin et al.

v.

Talmage G. Radford

July 31, 1985

Case No. (Law) 1779-A

By JUDGE H. CALVIN SPAIN

The Court has reviewed the pleadings, exhibits, evidence, and authorities cited by the various parties with respect to the above-captioned matter which was tried on July 24, 1985. After mature consideration of all of the facts, the Court finds for the defendants, Benjamin F. Summerlin and Terica G. Summerlin in the main cause of action, and Talmage G. Radford, the third-party defendant, in the third-party action, all for the reasons stated hereinafter.

There was an express written agreement that was a part of the April 14, 1983, contract for the sellers, Terica G. Summerlin and Benjamin F. Summerlin, to repair the floor in an upper deck wet bar to prevent any leak before the buyer, Barbara W. Rosenblum, closed on the premises. Chesapeake Roofing and Guttering Corp. was employed to make those repairs and they were made before May 13, 1983, as evidenced by plaintiff's Exhibit number 2. The Exhibit, which was a statement for services rendered, contained a "one year guarantee on workmanship and materials."

At closing the "statement" with incorporated guaranty, was delivered by the seller's attorney to the buyer. Within the one-year time frame after the closing, and before May 13, 1983, a leak did reoccur in the same area as that which was repaired in 1983 under the terms of the April 14th, 1983, contract. Clearly the guaranty (warranty) was in effect at the time of the leak reoccurrence.

At the time of the original settlement for the premises, both the buyer and seller had had an opportunity to inspect the premises and both were satisfied that the repairs as set forth in the contract of April 14, 1983, were in fact completed although the buyer and seller admittedly were not roofers and were incapable of giving expert opinions.

After the leak reoccurred, the third-party defendant, Talmage G. Radford, as a partner in Chesapeake Roofing and Guttering Corp., was given notice of the reoccurrence and an opportunity to inspect the same. Wanting a second opinion, the buyer obtained such from Stevens Roofing Corporation. A written proposal was forwarded to the plaintiff under cover letter from Stevens Roofing Corporation on May 17, 1984, for corrections and repairs to be made.

While Mr. Radford was given an opportunity to examine the premises, according to the evidence, he was not afforded an opportunity to make the necessary repairs again under the terms of his guaranty with respect to the reoccurring leak. The buyer testified, among other things, that she did send a note to the third-party defendant, Talmage G. Radford "telling him not to do anything." The note sent to Mr. Radford by the buyer amounted to a release of Mr. Radford from any further obligations under his guaranty of May 13, 1983.

The original contract for the repairs was between B. F. Summerlin and Chesapeake Roofing and Guttering Corp. At closing, in effect, the guaranty under that original contract was passed on to the buyer insofar as third-party benefits might be concerned. No formal assignment was alleged but can be inferred from the testimony. While such would not relieve the sellers from any residual obligation, assuming such existed, the purport of plaintiff's Exhibit number 2 does show the intent of the buyer and sellers. There was no direct testimony as to the finality of the original repairs insofar as

future leaks were concerned. However, both the sellers and buyer did not quibble with the one year guaranty which was given by Chesapeake Roofing and Guttering Corp. and it must be assumed that was the maximum length of time that any one expected the repairs to last.

Collaterally with all of these issues is the question of notice to the sellers. Apparently there was a purchase money deed of trust due to the sellers on or about May 31, 1984. The testimony in the trial indicated that the sellers became aware of a leak and some controversy concerning the same about one week before the due date of the deed of trust note. Apparently, the sellers were put on notice that the note would not be paid until new repairs were made. Subsequently, some arrangements were made to satisfy all parties pending the outcome of this law action. There was no testimony that the sellers were ever afforded an opportunity to enter in on the premises and to enforce their guaranty rights against Chesapeake Roofing and Guttering Corp. and/or to provide another contractor to make the necessary repairs.

Instead, it appears that somewhere on or about May 17, 1984, the buyer, Barbara W. Rosenblum, for whatever reason, entered on a separate course of action to have repairs made to the premises by a contractor of her choosing. No opportunity to repair was ever afforded Chesapeake Roofing and Guttering Corp. or the sellers, Terica G. Summerlin and Benjamin F. Summerlin. Having taken this course of action, the plaintiff (buyer) cannot now be heard with respect to damages arising from a "failure" of repairs originally made on or about May 13, 1983. That is so whether there is any residual rights under the terms of the April 14, 1983, contract between the buyer and seller with respect to such repairs, for the buyer had released Chesapeake Roofing and Guttering Corp., and in effect released and/or prejudiced the rights of the sellers by not permitting them to enforce the guaranty and/or provide other satisfactory repairs.

Further, the allegations of fraud and misrepresentation on the part of the sellers with respect to the repairs are utterly without merit. There is not a scintilla of evidence that the sellers ever made any fraudulent or misleading statements to the buyer. The buyer was never prevented from having her own inspection made with respect to the roof leak or having its repair conducted under her supervision. No attempt was made to prohibit the

buyer from a complete inspection and the necessity for the roof repairs was made a contract provision and the buyer cannot be said to have been misled as to the condition of the roof.

For the foregoing reasoning, it becomes obvious that the claim of Aetna Casualty and Surety Company, as subrogee to the plaintiff under its homeowner's policy, must fail as well.